The Honorable Eugene Shore State Representative, 124th District Rt. 2 Johnson, Kansas 67855
Dear Representative Shore:
As representative of the 124th district, you have requested our opinion on the following questions involving confined feeding facilities.
It should be noted that our office recently answered questions in Attorney General Opinion No. 94-92 regarding what constitutes an existing facility and the effect of the separation requirements on exempt facilities. You request an expansion of the former opinion.
You first ask:
 "If a facility has been erected or is in place prior to July 1, 1994, and is capable of confining animals as set out in the definition of confined feeding facility, and has been the subject of formal administrative action(s) by the department of health and environment, is the facility ineligible for the exemptions contained in K.S.A. 65-171d(k)?"
The June 27, 1994 policy statement issued by the Kansas department of health and environment (KDHE) stated that:
 "Under our understanding of legislative intent, the exemption was included to provide an amnesty period for the registration of existing facilities which have not caused any problems.
 "If it is found that the agency took formal administrative action (administrative orders, directives, notices of violation, etc.) which caused abandonment or cessation of facility operations or if agency actions resulted in the voluntary abandonment or cessation of operations (informed of KDHE rules, the operator abandoned actual or planned operations which would have been noncompliant), KDHE will:
 "1. Review facility plans in light of new separation distance requirements set out in SB 800. If the facility does or would comply with SB 800, KDHE will issue a permit or certification.
 "2. If the facility would still violate separation distance requirements, as set in SB 800, KDHE will conclude that, in light of forced or voluntary abandonment or cessation, the facility in question does not, in fact, exist. Such facilities are not eligible for the separation distance requirement exemption set out in SB 800.
 "Exemption-ineligible operators may modify separation distances through other mechanisms set out in SB 800 including waivers from the owners of impacted habitable structures, written support from the County Commission, or the absence of substantial objection after public notice."
In Attorney General Opinion No. 94-92 we discussed the propriety of KDHE's policy statement. We opined that the portion of KDHE's policy statement regarding application of amnesty was inappropriate for the following reasons:
 "This phrase would expand the statute beyond what the legislature stated. KDHE has the ability to further regulate this area through the implementation of proper regulations. However, even if this is an appropriate subject of regulation, the goal of this phrase cannot be accomplished simply by issuing a policy statement. `Statutory words are presumed to have been and should be treated as consciously chosen and, when understanding of their ordinary and common meaning, intentionally used with the legislation having meant what it said. . . . No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the statutory language used, the defect is one which the legislature alone can correct.' Kansas Ass'n of Public Employees Relations Bd., 13 K.A.2d 657, 661-662 (1989)."
Based on this same rationale, we opine that the statement regarding amnesty being applicable only to "existing facilities which have not caused any problems" is inappropriate. While we can understand the rationale for this statement it exceeds the agency's authority.
You also ask:
 "How does the restriction under K.S.A. 65-171d(k)(3) that expansion of a confined feeding facility be not less than the distance to the `nearest' habitable structure affect expansion toward the second nearest habitable structure? Does the distance between the confined feeding facility and the `nearest' habitable structure become the required interval between the confined feeding facility and the second or succeeding nearest habitable structures under the provisions of K.S.A. 65-171d(k)(3)?"
K.S.A. 65-171d(k)(3), as amended by L. 1994, ch. 213, sec. 1 states:
 "Expansion of a confined feeding facility, including any expansion for which an application is pending on the effective date of this act, if: (A) In the case of a facility with an animal unit capacity of 1,000 or more prior to the effective date of this act, the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion; or (B) in the case of a facility with an animal unit capacity of less than 1,000 prior to the effective date of this act and, the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion the animal unit capacity of the facility after expansion does not exceed 2,000."
KDHE's June 27, 1994 policy statement sets out that:
 "Facilities of between 300 and 1000 animal units may expand up to the cap of 2,000 animal units, provided that no part of the newly-expanded facility would be closer to any existing habitable structure than (1) the pre-expansion distance or (2) the SB 800 separation distance requirement of 1320 feet, whichever is less.
 "Facilities of greater than 1000 animal units may expand to any number of animal units, provided that no part of the newly-expanded facility would be closer to any existing habitable structure than the pre-expansion distance or (2) the SB 800 separation distance requirement of 4000 feet, whichever is less.
 "Legislative intent was to prevent confined feeding facilities — which were exempted from separation distances under Section 1(k) of SB 800 — from encroaching upon any nearby habitable structures which lies within the separation distances set out in SB 800."
We do not agree with KDHE's policy statement that the language of the statute can be read so as to prevent expansion towards any habitable structure. As previously quoted in Kansas Ass'n of Public Employees, we must follow the words chosen by the legislature and not interject our own viewpoint. The view that the legislature specifically intended to use the word "nearest" as opposed to the word "any" in subsection (k) is supported by the fact that in subsection (i) they used the word "any" instead of "nearest" when referring to new construction and new expansion.
However, we do believe the following phrase contained in (k)(3) regarding the expansion of exempt facilities sets out the other parameters that is allowed.
 "the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion."
Therefore, you are correct that no one could expand to any distance which would be less than the distance between the nearest habitable residence and the confined feeding facility.
You further ask:
 "What separation distance requirements apply to a facility that has been erected or is in place prior to July 1, 1994 and is capable of confining animals as set out in the definition of confined feeding facility, and has an animal unit capacity of less than 300, and seeks to expand to a capacity over 300 animal units?"
K.S.A. 65-171d(k)(3), as amended by L. 1994 ch. 213, sec. 1 in pertinent part states:
 "[I]n the case of a facility with an animal unit capacity of less than 1,000 prior to the effective date of this act and, the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion the animal unit capacity of the facility after expansion does not exceed 2,000."
As explained in Attorney General Opinion No. 94-92:
 "Facilities that do not hold 300 or more animal units are not generally regulated at all and therefore, it is argued that a facility that is originally exempt from regulation because of the smallness of the operation could not expand up to 2,000 animal units and continue to be exempt. Although we can understand the concerns expressed, the legislature did not choose to enact a clause that would specifically address the issue of going from under 300 to several thousand. Instead, they used the threshold of being either above or under 1,000 animal units prior to this act.
 "`When a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be' Randall v. Seeman, 228 Kan. 395, Syl. para. 1 (1980). In this case the statute plainly states that expansion of less than 1,000 animal units is exempt from the separation requirements as long as the facility was in existence prior to July 1, 1994, the expansion does not decrease the distance between the facility and the nearest habitable structure that existed prior to the expansion and the expansion does not exceed 2,000 animals. Alternatively, an existing facility with more than 1,000 animal units could expand to any number if `the expansion is located at a distance not less than the distance between the facility and the nearest habitable structure prior to the expansion.'"
In conclusion, it is our opinion that an existing facility pursuant to K.S.A. 65-171d(k), as amended by L. 1994 ch. 213, sec. 1, is eligible for the exempt status regardless of whether it has been the subject of formal administrative actions by KDHE. The distance between the nearest habitable structure and the confined feeding facility should be used as the minimum allowable distance when a facility is expanding toward the succeeding habitable structures. A facility which exists prior to the effective date of this act can expand as long as the provisions of K.S.A. 65-171d(k)(3), as amended by L. 1994, ch. 213, sec. 1, are observed.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Jane Stattelman Assistant Attorney General
RTS:JLM:MJS:bas